NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0566n.06

No. 16-1224

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: ALAN GRANADER, | ) | **FILED** |
| | ) | Oct 12, 2016 |
| Debtor. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| _____ | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| JUDITH GRANT, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Appellant, | ) | MICHIGAN |
| | ) | |
| v. | ) | |
| | ) | |
| ALAN GRANADER, | ) | |
| | ) | |
| Appellee. | ) | |

BEFORE: BOGGS, SUHRHEINRICH, and McKEAGUE.

PER CURIAM. Judith Grant appeals the district court's judgment affirming the bankruptcy court's denial of her motion to reopen the Chapter 7 case of Alan Granader.

Grant is Granader's ex-wife. On August 18, 2005, Granader borrowed $350,000 from the Alan Granader Irrevocable Family Trust ("Alan Granader Trust") and signed a promissory note agreeing to repay the loan. Grant filed for divorce from Granader on May 26, 2006. In 2008, following an eleven-day divorce trial, the Oakland County Circuit Court entered a judgment of divorce, awarding Grant monthly annuity payments of $21,531 from the trust. In 2010, the circuit court entered a stipulated order and nondischargeable money judgment against Granader personally in the amount of $47,146, which Granader has since paid in full. Also in 2010, the trust assigned the $350,000 promissory note to Grant. Granader was not a beneficiary

of the Alan Granader Trust, and it is undisputed both that Granader was not a party to the transfer of the promissory note to Grant and that the divorce judgment is silent as to the promissory note.

Granader filed for Chapter 7 bankruptcy on February 8, 2011. Granader listed the $47,146 judgment on Schedule E (creditors holding unsecured priority claims) and the $350,000 promissory note on Schedule F (creditors holding unsecured nonpriority claims). Granader received a discharge on July 19, 2011, and the bankruptcy court closed the case on August 26, 2011.

On June 29, 2014, Granader married his current wife, Rosellen Gliner. Ten months later, in April 2015, Grant filed three pleadings in the divorce case: a motion for preliminary injunction against Gliner, Granader's mother, and a trust in the name of Granader's mother; a motion to rescind and void a 2010 agreement between Grant and the trustee of the Alan Granader Trust; and a motion to hold Granader's brother Dan in contempt. Grant subsequently withdrew each of these motions. On April 28, 2015, Grant also filed a motion in Oakland County Circuit Court seeking a "Declaratory Ruling that Alan Granader is Personally Liable" for the monthly payments that Grant was owed from the Alan Granader Trust under the divorce judgment. In May 2015, Grant filed three new lawsuits, also in Oakland County Circuit Court: one against Gliner alleging receipt of fraudulent transfers; one against Granader's mother and the trust in her name, alleging the same; and one against the trustee of the Alan Granader Trust. Of these, the first two were dismissed by the court with prejudice, and Grant voluntarily dismissed the third without prejudice.

The Oakland County Circuit Court denied Grant's April 28 motion on June 3, 2015, explaining that it was "bound by [the] judgment of divorce," and that Grant's remedy in the event that the monthly trust payments failed was not to hold Granader personally liable for the

debt of the trust, but rather to seek from the divorce court relief such as spousal support from Granader, the availability of which would depend on Grant's financial circumstances and Granader's ability to provide such support.

Nine days later—and nearly four years after Granader's discharge in bankruptcy—Grant filed a motion to reopen Granader's Chapter 7 case, seeking (1) to file an adversary proceeding to determine that the $350,000 debt owed by Granader to her was nondischargeable "as this debt relates back to a domestic support obligation arising under the divorce judgment," (2) to recover allegedly fraudulent transfers made by Granader to his mother and her trust and to his current wife, and (3) to refer Granader to the Department of Justice for investigation of alleged tax and bankruptcy fraud. The bankruptcy court denied Grant's motion on the basis that she lacked standing to file a motion to reopen. Grant filed a motion for reconsideration, which the bankruptcy court granted because she did have standing. The bankruptcy court then went on to deny Grant's motion to reopen, addressing and rejecting each of Grant's three arguments in turn, for reasons we discuss below. Grant appealed the bankruptcy court's denial of her motion to reopen to the district court. The district court affirmed, and this timely appeal followed.

"When reviewing an order of a bankruptcy court on appeal from a decision of a district court, we review the bankruptcy court's order directly and give no deference to the district court's decision." *In re Lee*, 530 F.3d 458, 463 (6th Cir. 2008). The bankruptcy court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The decision as to whether to reopen a case is "committed to the sound discretion of the bankruptcy judge and will not be set aside absent abuse of discretion." *In re Rosinski*, 759 F.2d 539, 540–41 (6th Cir. 1985).

In its Supplemental Opinion Denying Creditor Judith Grant's Motion to Reopen Debtor's Case, issued on July 22, 2015, the bankruptcy court first addressed Grant's argument that

reopening the bankruptcy case was necessary in order to determine whether the $350,000 promissory note was a dischargeable debt. The court correctly held that although no time limit applies to filing an action to determine the dischargeability of certain debts, including those "incurred by the debtor in the course of a divorce . . . or in connection with a . . . divorce decree" (*see* 11 U.S.C. § 523(c), (a)(15)), the $350,000 debt was incurred neither in the course of a divorce nor in connection with a divorce decree, and thus was discharged in the 2011 bankruptcy proceeding. Grant argued in reply before the district court, "why would [Granader] agree to *voluntarily* pay the $47,146.00 owed under the Stipulated Order and Money Judgment" if he "actually disputed the validity of the lawsuit." What Grant fails to distinguish is that the $47,146 debt *was* nondischargeable because it, unlike the $350,000 promissory note, arose in the course of the divorce proceeding. Accordingly, the bankruptcy court was well within its discretion to determine both that the $350,000 debt was discharged and that reopening the bankruptcy case was not necessary in order to hold the debt discharged.

The bankruptcy court then turned to Grant's second argument, which is that Granader allegedly made preferential or fraudulent transfers prior to filing for bankruptcy and failed to disclose those transfers, such that reopening the bankruptcy case would allow a Chapter 7 Trustee to recover those transfers for the benefit of creditors. The bankruptcy court held that there was insufficient cause to reopen the bankruptcy case because Grant had a remedy under state law: specifically, recourse to Michigan's fraudulent transfer laws, which Grant appears already to have employed in the suits filed in Oakland County Circuit Court in May 2015. The bankruptcy court further noted that whereas any recovery in a reopened Chapter 7 proceeding would necessarily be divided among all creditors *pro rata*, Grant would enjoy a greater recovery (if she is entitled to any) under state law. Notably, Michigan law provides a six-year statute of limitations for recovering fraudulent transfers under its version of the Uniform Fraudulent

Transfer Act. M.C.L. §§ 566.39(a), 600.5813, 600.5855. Again, the bankruptcy court did not exceed the scope of its discretion in declining to reopen the bankruptcy case for the purpose of recovering allegedly fraudulent transfers.

Finally, the bankruptcy court turned to Grant's third argument for reopening the Chapter 7 case, which is that Granader orchestrated a fraud upon the bankruptcy court by failing to disclose fraudulent transfers and sources of income. To the extent that this argument is duplicative of Grant's second argument (that is, to the extent that Grant makes this argument in order to recover fraudulent transfers), the bankruptcy court was within its discretion to dismiss the argument. To the extent that this argument extends further and seeks to refer Granader to the Department of Justice for committing bankruptcy fraud, the bankruptcy court could still reasonably have found that reopening the Chapter 7 case was not a necessary step in order for such reference to be made. After all, statutory authority for a judge to report fraud upon a bankruptcy court to the United States Attorney's Office exists when the judge has "reasonable grounds for believing" that a violation has occurred, and in no way depends on the status of a bankruptcy proceeding as open or closed. *See* 18 U.S.C. § 3057(a). Thus, the bankruptcy court did not abuse its discretion in denying Grant's motion to reopen.

On appeal, the parties discuss at length the bankruptcy court's use of the doctrine of laches, which the bankruptcy court employed as an alternative means for denying the motion to reopen. Bankruptcy courts have held that the doctrine of laches may justify the denial of a motion to reopen. *See In re Nelson*, 100 B.R. 905, 906 (Bankr. N.D. Ohio 1989). "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961). The bankruptcy court here found lack of diligence but failed to address whether the delay in reopening the case would result in any prejudice to Granader. "Passage of time in itself

does not constitute prejudice." *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). Ordinarily, dismissing an action on the basis of laches without analyzing prejudice would constitute an abuse of discretion. *See In re Yonish*, No. 15-8006, 2016 WL 832587, at *3-4 (B.A.P. 6th Cir. Mar. 3, 2016). Here, however, because the bankruptcy court's opinion did not rely on the doctrine of laches but rather used it as an alternative ground on which to deny Grant's motion to reopen, and because the court had sufficient other basis on which to conclude there was no "cause" to reopen the Chapter 7 case, there was no abuse of discretion.

Accordingly, we **AFFIRM** the bankruptcy court's order denying Grant's motion to reopen.