**In re William M. KEAN, Debtor.**

**Civil Action No. 93–70083–W.**

United States Bankruptcy Court,
D. South Carolina.

Nov. 1, 1996.

William M. Kean, Pro Se.

John F. Beach, Columbia, SC, for Elizabeth and Douglas Goodenough, Marie and Walter Strakowski, Lois and Mathis Brown.

Edward David Sullivan, Columbia, SC, for James H. Sikes.

R. Geoffrey Levy, Columbia, SC, for NASD Arbitration Panel.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtor's *pro se* motion filed September 3, 1996 to reopen his Chapter 7 case pursuant to 11 U.S.C. § 350.[1] After receiving the testimony at the hearing on the motion on October 15, 1996 and considering the evidence, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On January 7, 1993, the Debtor filed a voluntary Chapter 7 bankruptcy petition.

---

**1.** Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

**2.** In that action, John A. Scott and Summit Land and Abstract, Inc. also filed a cross action

2. The Chapter 7 Trustee subsequently declared the case to be a "no-asset" and filed his Report of No Distribution on March 26, 1993. On May 25, 1993, the Debtor received his discharge pursuant to Rule 4004(c) of the Federal Rules of Bankruptcy Procedure and the Chapter 7 case was closed. On May 26, 1993, the discharge order captioned "Discharge of Debtor" issued by the Clerk of Court for the United States Bankruptcy Court for the District of South Carolina was mailed to all of the creditors on the Debtor's mailing matrix.

3. On September 20, 1994, Walter W. and Marie Brando Strakowski ("the Strakowski's") filed a lawsuit in the Court of Common Pleas, Richland County, South Carolina against the Debtor based upon the alleged fraudulent sale of securities. On October 20, 1994 that action was removed to the United States District Court for the District of South Carolina and then upon the request of the Debtor herein, referred to arbitration before the National Association of Securities Dealers, Inc. ("NASD") Arbitration Panel. In that proceeding, the Debtor asserted the discharge of the debt in bankruptcy as a complete defense to the Stakowski's claim. On August 6, 1996, the NASD Arbitration Panel found that the debt had not been discharged in the bankruptcy case and issued an award against the Debtor in the amount of $60,000.00 plus fees and costs.

4. On March 30, 1994, J. Mathis and Lois R. Brown ("the Browns") and Douglas A. and Elizabeth B. Goodenough ("the Goodenoughs") brought lawsuits against the Debtor in the Court of Common Pleas in Cherokee County, South Carolina.[2] Also upon motion of the Debtor,

---

against the Debtor; however, the Debtor's motion does not seek to reopen the case to seek sanctions against these parties for violation of the post-discharge injunction or for any other

these actions were consolidated for hearing and referred to the NASD Arbitration Panel and are scheduled for a hearing on November 5, 1996. In these proceedings, the Debtor also asserted his discharge in bankruptcy as an affirmative defense.

5. On June 15, 1996, James H. Sikes ("Mr. Sikes") filed a lawsuit against the Debtor in the Court of Common Pleas in Richland County, South Carolina seeking recovery pursuant to an Investment and Security Agreement entered into with the Debtor. The Debtor has failed to file an Answer to the Complaint or otherwise file an appearance.

6. The only reference to the above-referenced alleged creditors in the Debtor's Chapter 7 Schedules and Statements is a $30,000.00 debt to Mrs. Marie B. Strakowski based upon a guaranty for a "Eagle Blue Water Charter, Inc." note, which appears unrelated to the matters asserted by the Strakowskis before the NASD Arbitration Panel.

7. On September 3, 1996, the Debtor filed the within motion seeking to reopen his Chapter 7 case to bring an adversary proceeding against the Strakowskis, the Browns, the Goodenoughs, Mr. Sikes and the NASD Arbitration Panel for violation of the post-discharge injunction.

## CONCLUSIONS OF LAW

Pursuant to § 350(b), a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The landmark decision in the Fourth Circuit on reopening of bankruptcy cases pursuant to § 350 is *Hawkins v. Landmark Finance Company,* 727 F.2d 324 (4th Cir.1984) in which the Fourth Circuit found that the determination of whether to reopen a bankruptcy case is left to the sound discre-

tion of the bankruptcy court and depends upon the circumstances of the particular case.

In order to find that the alleged creditors violated the post-discharge injunction codified in § 542, there must first be a determination that the alleged creditors' claims were discharged in the Debtor's Chapter 7 case. If the claims were not discharged in the Chapter 7 case, there is no injunction as to them and can be no violation of the post-discharge injunction. The Debtor takes the position that while the creditors were not listed in the schedules and statements (except for the $30,000.00 debt to Mrs. Strakowski arising out of the guaranty of the Eagle Blue Water Charter, Inc. note), the creditors did have knowledge of the bankruptcy case and specifically alleges in an affidavit accompanying his motion to reopen that he gave telephonic notice of his Chapter 7 case to the Strakowskis, the Browns and Mr. Sikes immediately after filing his petition.[3]

However, the affidavits filed by Mr. Goodenough and Mr. Brown as an exhibit to their response to the within motion state that they did not learn of their possible claims against the Debtor until March of 1994, almost one year after the Chapter 7 case was closed. Mr. Strakowski's affidavit states that he and his wife were not aware that they had a claim against the Debtor based upon an alleged fraudulent sale of securities until late 1994. Mr. Sikes' affidavit states that he had no knowledge of the Debtor's bankruptcy case until the Spring of 1996.

Section 727(b) states that:

*Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined un-*

---

purpose related to these parties. Therefore, the Court need not address the appearance made by John A. Scott and Summit Land and Abstract, Inc. at the hearing.

**3.** While not specifically stated in the Debtor's affidavit, his motion also alleges that the Goode-

noughs otherwise had actual knowledge of the Chapter 7 filing. The Court's file reflects that apart from Maria Strakowski's $30,000 guaranty debt, these creditors were not listed in the Debtor's Schedules and Statements.

der section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b) (emphasis added). Section 523(a)(3), provides that a debt is excepted from discharge if it was:

neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3). The Court also recognizes that § 521(1) imposes a duty upon the Debtor to file a schedule of all liabilities to include all contingent and unliquidated liabilities known to him.

■ As reflected in the Findings of Fact, these alleged creditors (other than the $30,-000.00 debt to Mrs. Strakowski arising out of the guaranty of the Eagle Blue Water Charter, Inc. note) were not scheduled at all during the pendency of the Chapter 7 case. "Once a debtor receives a discharge, it is up to the creditor to show that he has not been duly scheduled, and the burden then shifts to the debtor to come forward with evidence that the creditor had notice or actual knowl-

edge of the bankruptcy proceeding." *In re Gray,* 57 B.R. 927, 930 (Bkrtcy.D.R.I.1986) and *In re Paul,* 194 B.R. 381 (Bkrtcy.D.S.C. 1995). Since it is uncontested that the alleged creditors were not duly scheduled, the burden of proof would fall on the Debtor to produce sufficient evidence that these creditors did have notice or actual knowledge of the bankruptcy case pursuant to § 523(a)(3).[4] At this time, there exists a dispute between the parties regarding actual notice or knowledge and whether the alleged creditors' claims may qualify for exception from discharge pursuant to § 523(a)(3)(B). Likewise, from the evidence presented, this Court can not presently conclude whether the Debtor's omission was part of a scheme of fraud or intentional design. *See In re Woolard,* 190 B.R. 70 (Bkrtcy.E.D.Va.1995) citing *In re Rosinski,* 759 F.2d 539 (6th Cir.1985). However, for the reasons stated below, this Court does not feel compelled to reopen the bankruptcy case at this time as to all of the alleged creditors in order to resolve these disputes and will examine the motion as it applies to the circumstances of each alleged creditor identified by the motion.

### I. The Strakowski and NASD Arbitration Panel claims

■ As one of the grounds for the denial of the Debtor's motion to reopen, the Strakowskis and the NASD Arbitration Panel assert that the issue of whether the Strakowskis' claim, as represented by their lawsuit, was discharged in the bankruptcy case has previously been decided by the NASD Arbitration Panel and that decision must be given res judicata effect. While bankruptcy courts have jurisdiction to determine dischargeability under § 523(a)(2), (a)(4) and (a)(6), the primary initial issue in this case involves a determination of dischargeability regarding an unscheduled debt pursuant to § 523(a)(3) under which circumstances exclusive jurisdiction does not rest with this Court.

An exclusive jurisdiction exception to the general rule of concurrent jurisdiction per

---

**4.** Since this was declared a "no-asset" case, there is no deadline to file claims. Therefore the pertinent issue here is whether these alleged creditors had actual notice or knowledge of the bankruptcy case in time to file complaints to except their debts from discharge pursuant to these code sections. It is clear from the record that no § 523(a)(2), (a)(4) or (a)(6) complaints were timely filed by these creditors.

section 1334(b) is carved out by Bankruptcy Code § 523(c), which, in some circumstances, reserves exclusive federal jurisdiction over four of the sixteen categories of nondischargeability action, including fraud actions under section 523(a)(2). In other words, there is an exclusive jurisdiction exception to the general rule of concurrent jurisdiction, and there is a concurrent jurisdiction exception to that exclusive jurisdiction exception. [The Debtor's] dischargeable omitted debt defense remains a matter of concurrent jurisdiction because section 523(a)(3) is not covered by section 523(c).

*In re Franklin,* 179 B.R. 913 (Bkrtcy. E.D.Cal.1995). The Bankruptcy Court for the District of Massachusetts has recently reiterated this concurrent jurisdictional standard.

> In the *Ford* case, the court observed the following with respect to issues that must be determined under federal law: ... state courts have been held to have concurrent jurisdiction with bankruptcy courts as to certain issues even though those issues must be decided under federal law. This is usually true of dischargeability issues which need not be raised within a short time-period, and hence may be the subject of dispute long after the bankruptcy case is closed and jurisdiction of the bankruptcy court over the affairs of the debtor has been relinquished.

*In re Whitten,* 192 B.R. 10 (Bkrtcy.D.Mass. 1996) citing *In re Ford,* 188 B.R. 523, 526 (Bkrtcy.E.D.Pa.1995).

The NASD Arbitration Panel's award dated August 6, 1996 specifically considered the Debtor's defense of bankruptcy discharge:

> Kean contended that the voluntary petition for bankruptcy filed on January 7, 1993 by William M. Kean, and the subsequent Order of Discharge from the United States Bankruptcy Court dated May 25, 1993, was a bar to the Claimants' recovery on the claims asserted against Kean in this arbitration. At the conclusion of the hearing, the record was left open to allow Claimants

and Kean to submit briefs on the issue. The panel, after reviewing the briefs submitted by the respective parties, determined that they had jurisdiction over Kean and the William M. Kean's bankruptcy was not a bar to Claimant's recovery on the claims against Kean.

The NASD Arbitration Panel, which was conferred jurisdiction over the Strakowski's proceedings by the United States District Court for the District of South Carolina upon request of the Debtor, specifically determined after arguments of the parties that the claim of the Strakowski's was not discharged in the Debtor's Chapter 7 case. Many courts have recognized that a debtor who has fully litigated a dischargeability issue is state court can be collaterally estopped from seeking relief in the bankruptcy courts. *See In re Benham,* 157 B.R. 655 (Bkrtcy.E.D.Ark. 1993), *In re Schneider,* 126 B.R. 626 (Bkrtcy. M.D.Fla.1991) and *In re Whitten,* 192 B.R. 10 (Bkrtcy.D.Mass.1996). This Court will not now look behind the NASD Arbitration Panel's award and finds that determination to be binding pursuant to the doctrines of res judicata and collateral estoppel. Since the Strakowskis claim was not discharged, there was no discharge injunction pursuant to § 524 as to their claim and therefore their prosecution of the claim and its adjudication by the courts and the NASD Arbitration Panel could not operate as the violation the Debtor seeks to prosecute upon the reopening of the bankruptcy case. Therefore the Court denies the Debtor's motion to reopen as it relates to the Strakowskis and the NASD Arbitration Panel.[5]

## II. The Goodenough and Brown claims

■ As to the pending state court and arbitration proceedings involving the Goodenoughs and the Browns, Rule 8(c) of the South Carolina Rules of Civil Procedure specifically allows a discharge in bankruptcy to be included as an affirmative defense in those proceedings as the Debtor has done in his amended Answer filed on January 5, 1995. This Court has recognized that the state court, and in this case the NASD Arbitration

---

**5.** The NASD Arbitration Panel also raised the defenses of Judicial Estoppel and Arbitral Immunity to the Debtor's motion to reopen; however based upon the ruling of the Court, these additional defenses will not be discussed at this time.

Panel by reference, is competent to determine if the Chapter 7 discharge bars a creditors' particular claims. *See In re Gardner,* 194 B.R. 576 (Bkrtcy.D.S.C.1996) and *Matter of James,* 184 B.R. 147 (Bkrtcy.N.D.Ala. 1995).

Until the claims are found to have been discharged in the Debtor's bankruptcy case, there can be no violation of the post-discharge injunction. Since such a determination as raised by the Debtor is pending and for the reasons stated below, this Court sees no reason to reopen this case at this time regarding the claims of the Goodenoughs and the Browns.

■ As has been stated previously, the Debtor raised the issue of his Chapter 7 discharge as an affirmative defense in the Strakowski, Goodenough and Brown litigation. It was not until after the Arbitration Panel issued its final decision in the Strakowski litigation against the Debtor that he attempted to have his bankruptcy case reopened to assert a violation of the discharge injunction. Being apparently unhappy with the NASD Arbitration Panel's award, the Debtor also then sought to sanction the NASD Arbitration Panel for violating the bankruptcy discharge. Because of the delay in seeking to reopen the bankruptcy case, the alleged creditors and the NASD Arbitration Panel take the position that they have been prejudiced and that the equitable doctrine of laches prevents the Debtor's efforts now to reopen the case.

■ Laches is "defined as neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to adverse party, operates as [a] bar in [a] court of equity." *Black's Law Dictionary* 786 (5th ed.1979). It has been recognized as a proper ground for denying the reopening of a bankruptcy case.

> Laches is sustainable only on proof of both of two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Mogavero v. McLucas,* 543 F.2d 1081, 1083 (4th Cir. 1976) (quoting *Costello v. United States,*

365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)).

*In re Paul,* 194 B.R. 381 (Bkrtcy.D.S.C.1995). It appears to the Court that by not seeking to have the Bankruptcy Court reopen his case for over eighteen (18) months after being served with the Complaints of these alleged creditors but waiting instead until these creditors had incurred costs and expenses associated with the state court litigation and reference to the NASD Arbitration Panel, the Debtor is guilty of a lack of due diligence which had a prejudicial impact on the affected alleged creditors. The amount of time that elapsed between the filing of the various Complaints against the Debtor and the filing of the motion to reopen is an important factor.

> The consensus of authority holds that the most important consideration in deciding whether to reopen the case is the timeliness of the motion, e.g., *In re Tyler,* 27 B.R. 289, 292 (E.D.Va.1983); *In re Serafini,* 30 B.R. 606, 608 (Bkrcy.W.D.Pa.1983); *Matter of Admire,* 15 B.R. 405, 407 (W.D.Mo.1981); [*In re Ridill,* [1 B.R. 216] 218 [ (D.C.Cal.1979) ] At the heart of this view is the doctrine of laches, which not only applies in bankruptcy proceedings but is "an important consideration because the chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period of time.' " *Crosby v. Mills,* 413 F.2d 1273, 1276 (10th Cir.1969) quoting *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966).

*Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corporation,* 60 B.R. 412 (D.V.I.1986), aff'd 867 F.2d 169 (3rd Cir. 1989). As stated in the Findings of Fact, the Debtor filed a voluntary Chapter 7 bankruptcy petition on January 7, 1993 and received his discharge on May 25, 1993. The Brown and Goodenough litigation was filed on March 30, 1994. The within motion to reopen the Debtor's Chapter 7 case to bring an adversary proceeding against the Browns and the Goodenoughs for violation of the post-discharge injunction was not filed until September 3, 1996, only two months prior to the scheduled November 5, 1996 hearing before the NASD Arbitration Panel.

For these reasons, the Court is also convinced that the doctrine of laches prevents this Court from reopening this case at this time as to the claims of the Goodenoughs and the Browns.[6,7] The Chapter 7 discharge has been raised by the Debtor before the NASD Arbitration Panel and since that panel is competent to make the necessary initial determination of whether the Goodenoughs' and the Browns' claims were discharged in the bankruptcy case and since the arbitration hearing is scheduled for November 5, 1996, less than one week from the date of this Order, this Court will not interfere with the Arbitration Panel's hearing and will allow it to go forward.[8]

### III. The Sikes claim

■ As the Debtor's motion relates to Mr. Sikes, the Court is not able to reach the same conclusion. The Sikes lawsuit is apparently based upon an Investment and Security Agreement entered into with the Debtor in February of 1992, prior to the filing of the bankruptcy petition. Mr. Sikes filed his action against the Debtor on June 15, 1996 to which the Debtor has not filed an responsive pleading and therefore there does not appear to have been any prior assertion or determination, nor is there an immediately pending hearing to determine, the defense of discharge.[9] While Mr. Sikes was not listed in the Debtor's schedules, the Debtor asserts and Mr. Sikes disputes, that Mr. Sikes had timely actual notice or knowledge of the bankruptcy case so as to preclude a § 523(a)(3) exception to discharge.

It appears that this Court could likely determine the issue of whether Mr. Sikes was effected by the Debtor's Chapter 7 discharge in a timely manner, a procedure that would benefit both parties. At such a hearing, this Court could consider more complete information presented by the parties including any defenses asserted by Mr. Sikes such as res judicata, collateral estoppel and latches. This Court is inclined at this time to condition or limit the reopening of the case to allow only the institution of an adversary proceeding by the Debtor to determine dischargeability pursuant to § 523(a)(3). Based only upon the summary assertion of notice indicated by the Debtor's affidavit, Mr. Sikes should not be presently subject to an action for violation of the discharge injunction.

### CONCLUSION

Pursuant to the *Hawkins* decision, the determination to reopen a case is left to the sound discretion of the Court and depends upon the circumstances of the case, including the prejudice to the creditor.

> Our decision in this case turns largely on the meaning to be given § 350(b). The debtors contend that we should adopt a per se rule that a debtor has the right in all instances to reopen a closed case to file a post-discharge lien avoidance complaint. Some courts have so held. But there is no unanimity in this regard. Other courts have held that debtors never can file post-discharge complaints. A third line of authority has taken a middle ground, holding that the right to reopen a case depends upon the circumstances of the individual case and that the decision whether to reopen is committed to the court's discretion. We think that the discretionary view is the better one, and we adopt it as the rule in this circuit.

*Hawkins v. Landmark Finance Company,* 727 F.2d 324 (4th Cir.1984). For the reasons

---

6. Additionally, by filing the motion with the United States District Court and the State Court to have those matters decided by the Arbitration Panel after expressly raising the defense of the bankruptcy discharge rather than seeking that determination in this Court, the Debtor may also have waived any argument that this Court should be the ensuing tribunal to determine the dischargeability of these debts.

7. Attorneys representing John A. Scott and Summit Land Abstract, Inc., as apparent cross complainants against the Debtor in connection with the Goodenough and Brown lawsuits, also appeared before the Court to object to the reopening of the case. The Debtor did not request reopening to take action against John A. Scott or Summit Land Abstract, Inc. and therefore such is not before the Court at this time.

8. If the claims are found to be discharged, then the Debtor may refile a motion to reopen in order to prosecute an action for violation of the discharge injunction.

9. The Court was presented with very little information related to the status of the Sikes lawsuit and has not been presented with any pleadings or judgments that may have been entered.

stated, the Court will deny the Debtor's Motion to Reopen filed September 3, 1996 as it relates to the Strakowskis, Goodenoughs and Browns. However, the Debtor's Motion to Reopen filed September 3, 1996 as it relates to Mr. Sikes is granted for the limited effect of allowing the Debtor to file a dischargeability adversary proceeding pursuant to § 523(a)(3) against Mr. Sikes within fifteen (15) days of the entry of this Order. In as much as the automatic stay was terminated upon the granting of the Debtor's discharge and is not revived by this Order [10], the reopening of this case shall in no way effect, stay or enjoin any actions by the Strakowskis, the NASD Arbitration Panel or any other court from the collection of the Strakowski arbitration award against the Debtor. Additionally, the reopening of this case shall in no way effect, stay or enjoin any actions by the Goodenoughs, the Browns, the NASD Arbitration Panel or any other party involved in that pending arbitration proceeding. Creditors actions would only be affected by the discharge injunction if it were later found applicable to their claims.

**AND IT IS SO ORDERED.**

10. *See In re Bryant,* 95 B.R. 856 (Bkrtcy.M.D.Ga. 1989), *In re Gibson,* 172 B.R. 47 (Bkrtcy. W.D.Ark.1994) and *Johnson v. Cramer,* 598 So.2d 980 (Ala.Civ.App.1992).